UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RONALD A. MACERA, *et al.*,

                Plaintiffs,

   -against-                                      6:16-CV-0668 (LEK/TWD)

VILLAGE BOARD OF ILION, *et al.*,

                Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Pro se plaintiffs Ronald A. Macera and Catherine M. Macera commenced this action against defendants Village Board of Ilion, CEO James Trevett, and Chief Timothy Parisi pursuant to 42 U.S.C. § 1983. Dkt. No. 1 ("Complaint"). Presently before the Court is Defendants' Motion to Dismiss. Dkt. Nos. 11 ("Motion"), 11-3 ("Memorandum"). Plaintiffs responded to Defendants' Motion and moved for summary judgment, Dkt. No. 15 ("Response"), and Defendants filed a reply, Dkt. No. 17 ("Reply"). For the following reasons, Defendants' Motion is granted in part and denied in part, and Plaintiffs' motion for summary judgment is denied with leave to renew.

## II. BACKGROUND

### A. Factual Background[1]

Plaintiffs live in Ilion, New York. Compl. ¶ 2. For several years now, Plaintiffs have been feuding with the owners and patrons of a day care center located next to their house. Id. ¶¶ 6–28. The day care center is "NYS licensed," and Plaintiffs describe it as a "Home Occupancy Business." Id. ¶ 6. The day care center is also "enjoined with [the Plaintiffs'] residence . . . by a deed stipulation of shared property." Id. The dispute appears to stem from the day care center's alleged violations of several zoning regulations. Id. ¶¶ 9–10, 16, 19–20.

From January 2009 to December 2011, CEO James Trevett, who appears to work for the Village of Ilion in some capacity, gave Plaintiffs incorrect information about the applicability of "the Codes Regulation of Home Occupancy Business" to the day care center. Id. ¶ 6. In December 2011, Plaintiffs informed "the Village Board (the Mayor)" of the issues they were having with the day care's alleged violations of zoning regulations. Id. ¶ 7. The next month, the day care center submitted false documents to the Village Board and Trevett. Id. ¶ 8. The nature of these documents is unclear, though it appears that they had something to do with the day care center's compliance with zoning regulations. Id. ¶ 8. Plaintiffs note that Trevett and the Zoning Board "failed to notify [Plaintiffs] that [their] complaint was proceeding," id., though it is not

---

[1] Because this case is before the Court on a motion to dismiss for failure to state a claim, the allegations of the Complaint are accepted as true and form the basis of this section. Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor"). Further, because Plaintiffs are proceeding pro se, the Court construes their Complaint liberally. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

clear what complaint Plaintiffs are referring to and what significance should be attached to the lack of notification.

Over a year later, in June 2013, Plaintiffs expressed concern to Timothy Parisi, the Chief of the Ilion Police Department, about the "addition of a parking lot[] to the front of the Daycare Business." Id. ¶ 9. Parisi told Plaintiffs that the parking lot did not violate any laws, but "this [determination was] a matter for the Traffic and Commission Board," not Parisi. Id. The day care center went ahead and "paved" the parking lot on June 25, 2013. Id. ¶ 10. Two or three days later, Ilion was "devastated [by] flooding," id., and "[w]hen things calmed down," Plaintiffs again contacted Parisi, id. ¶ 11. Plaintiffs gave him photographic evidence of parking violations resulting from the newly built parking lot. Id. Parisi acknowledged that parking violations were occurring in front of the day care center, and he "assured [Plaintiffs] that he would . . . up patrols, . . . and . . . encouraged [them] to feel free to call with any violation concerns." Id. ¶ 12. Plaintiffs appear to have called Parisi and told him the times when the violations were taking place, but they were hesitant to do so, because they were experiencing "harassment from the daycare, daycare employee[s], clients and neighbors." Id. ¶ 13. Despite the calls, Parisi did not increase patrols on the street. Id. ¶ 14.

Also in June 2013, Plaintiffs wrote to Trevett to inform him that the day care center was planning on "relocat[ing] a portion of [a] fence that was erected in May of 2011, without a building permit, that would violate an enjoined deed stipulation, between our common shared driveway." Id. ¶ 16. Trevett responded by saying that "the Village doesn't get involved with enforcing deed stipulations." Id. ¶ 17. Yet Plaintiffs were not asking for this. Id ¶ 18. Instead, they wanted Trevett to follow the proper procedure when someone questions the legality of such

a relocation, namely, "the encroaching [fence] is denied a permit and [the owners are] directed to file for [a] variance with [the zoning board]." Id. This never happened, and in August 2013, the owners of the day care relocated the fence without a permit, which "took Eminent Domain of [Plaintiffs'] property" by making their "deed unclean." Id. ¶¶ 19–20. Through their attorney, Plaintiffs informed the day care center's owners of the violation, and Plaintiffs received a response from the Village Board attorney. Id. ¶ 19. Around this time, Trevett falsely told Plaintiffs that the fence was not illegal. Id. ¶ 21.

Things soon came to a head with the owners of the day care center, who "hung a sign in front of the business . . . that provided false statements of facts [about Plaintiffs] and encouraged . . . harassment and intimidation [of Plaintiffs]." Id. ¶ 22. Plaintiffs experienced harassment as a result of the sign until "late September/early October 2013, on a daily basis." Id. Then, one day in November 2013, Plaintiffs returned to their home to find cars blocking the sidewalk in front of the day care center. Id. ¶ 25. When Plaintiffs backed into their driveway, their view of foot traffic was obstructed by the parked cars. Id. Plaintiffs almost hit two young children who "appeared out of nowhere from behind the vehicle obstruction." Id. Either Ronald or Catherine wrote a blog post to express frustration about this incident. Id. ¶ 26. A few days later, the Village Board, through its attorney, demanded that the blog be removed. Id. ¶ 27.

In January 2014, Plaintiffs "were served . . . via the Village Attorney [with] a lawsuit on behalf of the . . . daycare." Id. ¶ 28. The lawsuit included a temporary restraining order ("TRO") forbidding Plaintiffs from "contacting Ilion Police Department, NYSOCFS, CPS and any public agency with 'frivolous' complaints." Id. The TRO did not define "frivolous." Id. The TRO was "based on information from the IPD, that was supplied to [the] village attorney and [the] daycare

4

business." Id. ¶ 29. Plaintiffs made several New York Freedom of Information Law ("FOIL")
requests on January 14, 2014, in an attempt to obtain this information, but those requests were
denied. Id. Plaintiffs made other FOIL requests that were successful, and they learned from the
documents they obtained that the Village Board had "established a [vested financial] interest with
the . . . daycare." Id. ¶ 30. In particular, the Village Board paid for legal work performed by the
Village Attorney on behalf of the day care center. Id.

On January 18, 2014, Plaintiffs installed security cameras on their property, and on
January 23, 2014, Plaintiffs received an amended TRO from the Village Attorney that prohibited
them "from using any cameras, either still or video." Id. ¶ 32. In February 2014, the "NYS
Appellate Court" vacated the TROs. Id. ¶ 33.

Plaintiffs allege violations of their rights under the First, Fifth, and Fourteenth
Amendments, e.g., id. ¶¶ 7, 18, 20, 31, and they seek damages in the amount of $7,500,000, id.
¶ 34.

### B. Procedural History

Plaintiffs filed their Complaint on June 14, 2016. Compl. Defendants moved to dismiss
the Complaint on August 2, 2016. Mot. Defendants argue that Plaintiffs fail to state a First
Amendment claim because they have not alleged facts suggesting that their speech was actually
chilled by Defendants' conduct or that Defendants' actions were motivated by Plaintiffs' decision
to exercise their First Amendment Rights. Mem. at 5–7. Defendants also suggest that any
Fourteenth Amendment claim must fail because Plaintiffs have failed to allege that they were
deprived of any property right. Id. at 7–8. Finally, Defendants argue that several of Plaintiffs'
claims are barred by the statute of limitations applicable to § 1983 actions, id. at 9–10, and they

5

argue that any claim based on the denial of Plaintiffs' FOIL requests must be dismissed. Id. at 10–11. Plaintiffs responded in part by asking the Court to grant summary judgment in their favor. Resp. at 13.

III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

### A. First Amendment Retaliation

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam) (citing Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001)).[2] "[A] plaintiff seeking to establish a First Amendment retaliation claim must typically allege some chilling of his speech." Schubert, 775 F. Supp. 2d at 711. But "[c]hilling is required to be alleged only in cases where a plaintiff states no harm independent of the chilling of speech." Puckett v. City of Glen Cove, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (citing Gill v. Pidlypchak, 389 F.3d 379, 383 (2d Cir. 2004)); see also Vaher v. Town of Orangetown, 916 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) (noting that a First Amendment retaliation claim must allege some kind of harm, though that harm need not "be a chilling of speech in every case"). In other words, "in limited contexts, other forms of harm have been accepted in place of th[e] 'actual chilling' requirement." Zherka v. Amicone, 634 F.3d 642, 645 (2d Cir. 2011).

Defendants argue that the Court must dismiss the First Amendment retaliation claim because Plaintiffs have failed to allege that their speech was actually chilled by Defendants' conduct. Mem. at 7. True, Plaintiffs have not made "factual allegations setting forth specific

---

[2] Defendants do not appear to dispute that Plaintiffs have satisfied the first prong of this test by complaining to Defendants about the day care center situation. Mem. at 5; see also Schubert v. City of Rye, 775 F. Supp. 2d 689, 712 (S.D.N.Y. 2011) ("It is indisputable that Plaintiffs' right to complain to government officials and to seek redress is protected by the First Amendment.").

7

instances in which [they] 'desired to exercise [their] First Amendment rights but [were] chilled by' the alleged conduct of the . . . Defendants." Wood v. Town of East Hampton, No. 08-CV-4197, 2010 WL 3924847, at *7 (E.D.N.Y. Sept. 30, 2010) (quoting Mangano v. Cambariere, No. 04-CV-4980, 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007)). But Plaintiffs need not show actual chilling because they have alleged "an injury separate from any chilling effect." Puckett, 631 F. Supp. 2d at 239.

Plaintiffs argue primarily that Defendants retaliated against them by failing to enforce zoning regulations against the day care center. E.g., Compl. ¶¶ 9, 14, 16, 19, 21. In Gagliardi v. Village of Pawling, 18 F.3d 188, 194–95 (2d Cir. 1994), the Second Circuit held that the defendants' failure, over several years, to enforce zoning and other land-use regulations against a piece of property adjacent to the plaintiffs' land was sufficient to survive a motion to dismiss the plaintiffs' First Amendment retaliation claim. In particular, the plaintiffs in Gagliardi alleged that the corporation that owned the adjacent property began violating zoning regulations in 1981 by, among other things, "caus[ing] excessive noise and vibration and storing explosive material that created a hazardous situation." Id. at 189–90. The plaintiffs started to complain to the defendants once the violations began, id. at 195, but the defendants "thereafter not only failed to enforce a noise ordinance [against the adjacent land] after its enactment in 1985, but also granted permits to the corporate property owner in 1985 and 1986 and approved a damaging property swap in 1990," Schubert, 775 F. Supp. 2d at 712 (citing Gagliardi, 18 F.3d at 189–91). Because the defendants' conduct had "a detrimental effect on" the plaintiffs' property, the court in Gagliardi "did not require the plaintiffs to . . . allege[] actual chilling." Kaminsky v. Schriro, No. 14-CV-1885, 2016 WL 3460303, at *13 (D. Conn. June 21, 2016).

8

Under Gagliardi, Plaintiffs need not allege that their speech was actually chilled. It is sufficient that they alleged independent harms resulting from Defendants' retaliatory failure to enforce zoning regulations. Defendants allowed the day care center to construct a parking lot in violation of applicable land-use regulations, and the parking lot led to serious congestion in front of the day care center, which in turn caused Plaintiffs to almost run over two young children. Compl. ¶¶ 9, 11–12, 25. Moreover, Trevett failed to follow proper procedure when Plaintiffs informed him that the day care center had plans to relocate a fence without a permit and in violation of an "enjoined deed stipulation" between Plaintiffs and the day care center. Id. ¶¶ 16, 18. As a result of the relocation, Plaintiffs' "deed [became] unclean." Id. ¶ 20. It is not clear what an "unclean deed" is, but Plaintiffs appear to be suggesting that the erection of the fence negatively affected their ownership interest in the property they share with the day care center. Defendants' conduct was preceded by numerous complaints made by Plaintiffs to Defendants regarding the day care center's alleged noncompliance with zoning and land-use regulations. Id. ¶¶ 7–9, 16. Because at least one district court in this circuit has held that the loss of an unobstructed view of the water is a sufficient harm for purposes of a First Amendment retaliation claim, Puckett, 631 F. Supp. 2d at 230–32, 240, the Court has no hesitation in refusing to dismiss Plaintiffs' First Amendment claim on the basis of the harms alleged here.

Defendants also argue that the Court must dismiss Plaintiffs' First Amendment retaliation claim because Plaintiffs have not sufficiently alleged that Defendants' behavior was motivated or caused by Plaintiffs' exercise of their First Amendment rights. Mem. at 5. Defendants point out that the "generalized allegations of harassment [related to] the sign placed by [the] [d]aycare" do not involve "any action taken by Defendants." Id. That is true, but it ignores other conduct

9

Plaintiffs appear to consider retaliatory, namely, Defendants' failure to enforce zoning regulations against the day care center.

"[T]he Second Circuit has explained that '[t]he ultimate question of retaliation [in the First Amendment context] involves a defendant's motive and intent, both difficult to plead with specificity in a complaint,' and thus '[i]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred.'" Maco v. Baldwin Union Free Sch. Dist., No. 15-CV-3958, 2016 WL 4028274, at *3 (E.D.N.Y. July 26, 2016) (alterations in original) (quoting Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002)); see also Jones v. Bay Shore Union Free Sch. Dist., 947 F. Supp. 2d 270, 276 (E.D.N.Y. 2013) ("[A]lleging motivation with specificity would be difficult [in the First Amendment retaliation context]."). "[R]etaliatory intent may be inferred from an ongoing course of adverse action by the defendant against the plaintiff." Women's Interart Ctr., Inc. v. N.Y.C. Econ. Dev. Corp., No. 03-CV-2732, 2005 WL 1241919, at *28 (S.D.N.Y. May 23, 2005). Moreover, "'[d]epartures from the normal procedural sequence' of governmental decisionmaking 'also might afford evidence that improper purposes are playing a role.'" Id. (quoting Village of Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 267 (1977)).

Plaintiffs have alleged enough facts to create an inference that Defendants' conduct was motivated by retaliatory animus. For example, as discussed above, when Plaintiffs told Trevett about the day care center's plans to relocate a fence, Trevett failed to comply with the proper procedure, which was to deny the permit for the fence and require the day care center to ask for a variance. Compl. ¶ 18. Instead, he simply told Plaintiffs that the Village did not enforce deed stipulations. Id. ¶ 17. That kind of "deviat[ion] from . . . standard procedure" can provide

10

circumstantial evidence of retaliatory motive. Tomlins v. Village of Wappingers Falls Zoning Bd. of Appeals, 812 F. Supp. 2d 357, 373 (S.D.N.Y. 2011) (collecting cases). Another departure from standard procedure arguably took place when some of the Defendants aided the day care center in obtaining two TROs against Plaintiffs, TROs that were later vacated by a New York state court. Compl. ¶¶ 28–29, 32. Moreover, Plaintiffs have alleged something of "an ongoing campaign of adverse action" on the part of Defendants. Econ. Opportunity Comm'n of Nassau Cty., Inc. v. County of Nassau, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000). Specifically, Plaintiffs began complaining about the day care situation in December 2011, and starting in June 2013, Defendants took several adverse actions against Plaintiffs, including refusing to enforce multiple zoning regulations against the day care center and helping the day care center obtain two TROs against Plaintiffs. Compl. ¶¶ 7–9, 16–19, 21, 28–29, 32.³ From this "chronology of events," the Court can infer "that actions taken by the . . . Defendants were motivated by or substantially

---

³ This chronology of events shows why Defendants' argument about the statute of limitations is misplaced. Mem. at 10. "In an action arising in New York pursuant to Section 1983, the applicable statute of limitations is borrowed from the 'general or residual [state] statute [of limitations] for personal injury actions,' which is three years." Prince v. County of Nassau, 837 F. Supp. 2d 71, 93 (E.D.N.Y. Sept. 21, 2011) (alterations in original) (quoting Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002)). Section 1983 claims accrue "when the plaintiff knows or has reason to know of the harm." Smith v. N.Y.C. Dep't of Educ., No. 09-CV-9256, 2011 WL 5118797, at *5 (S.D.N.Y. Oct. 28, 2011) (quoting Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009)). The harms at issue in this case began on June 25, 2013, when, despite the concerns Plaintiffs expressed to Defendants, the day care center built the parking lot in violation of relevant zoning regulations. Compl. ¶¶ 10, 19. Plaintiffs did complain to Defendants well before then, but the Court cannot exclude those complaints from consideration, because "the injury is not the speech, but the response thereto." Valenti v. Torrington Bd. of Educ., 601 F. Supp. 2d 427, 439 (D. Conn. 2009). Thus, since this action began on June 14, 2016, Compl., Plaintiffs' First Amendment retaliation claims are not time barred.

caused by the [plaintiffs'] exercise of their First Amendment rights." Gagliardi, 18 F.3d at 195.[4]

Thus, Plaintiffs' First Amendment claim cannot be dismissed at this stage.

### B. Procedural Due Process

The procedural component of the Due Process Clause prevents the deprivation of a protected interest absent the provision of sufficient procedural protections. Thus, the inquiry into a procedural due process claim is a two-prong test: "(1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." Adams v. Suozzi, 517 F.3d 124, 127 (2d Cir. 2008) (quoting Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir. 2003)); see also Zinermon v. Burch, 494 U.S. 113, 126 (1990) ("[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.").

"[A] constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner." Gagliardi, 18 F.3d at 192. Thus, "an individual does not have an interest in a Town's enforcement of discretionary [zoning] codes." Rankel v. Town of Somers, 999 F. Supp. 2d 527, 546 (S.D.N.Y. 2014). "New York courts have held that 'the decision to enforce . . . [town building and zoning] codes rests in the discretion of the public officials charged with enforcement.'" Nemeth v. Village of Hancock, No. 10-CV-1161, 2011 WL 56063, at *3 (N.D.N.Y. Jan. 7, 2011) (alterations in original) (quoting

---

[4] While Plaintiffs first complained to the Village Board in December 2011, and the first adverse action took place in June 2013, that temporal gap does not prevent Plaintiffs from showing retaliatory intent given the pattern of retaliatory conduct discussed above. See Shub v. Westchester Comm. Coll., 556 F. Supp. 2d 227, 246 (S.D.N.Y. 2008) ("[T]he absence of close temporal proximity of the protected activity to the adverse action is not necessarily fatal, because evidence of an ongoing pattern of retaliatory conduct and intent can also establish a causal connection.").

Young v. Town of Huntington, 503 N.Y.S.2d 657, 657–58 (App. Div. 1986)); see also Mueller v. Zoning Bd. of Appeals of the Town of Southold, 783 N.Y.S.2d 593, 595 (App. Div. 2004) ("Zoning boards have broad discretion in interpreting local zoning ordinances . . . ."). Accordingly, "[i]n the wake of Gagliardi, the lower courts have found that there is no due process right to rigorous enforcement of land-use laws." Schubert, 775 F. Supp. 2d at 704 (collecting cases).

Plaintiffs cannot state a procedural due process claim based on Defendants' failure to enforce either zoning regulations against the day care center or deed stipulations between Plaintiffs and the day care center. That is because under New York law, "[t]he decision by. . . officials to enforce any of the myriad zoning violations existing in a given municipality [is] left to the discretion of these officials." Fried v. Fox, 373 N.Y.S.2d 197, 199 (App. Div. 1975). Thus, Plaintiffs did not have a protected property interest in the enforcement of the zoning regulations against their neighbors.

Plaintiffs' Complaint might also be read to allege a procedural due process violation stemming from Parisi's failure to investigate their complaints about the parking violations occurring in front of the day care center. Compl. ¶¶ 12, 14. But "courts in this circuit have consistently declined to recognize a claim of 'failure to investigate' as a violation of due process giving rise to a damages action." Grega v. Pettengill, 123 F. Supp. 3d 517, 536 (D. Vt. 2015) (collecting cases). Plaintiffs also appear to allege a procedural due process claim based on false information provided to them by Defendants. Compl. ¶¶ 6, 21, 31. False statements by the government can give rise to procedural due process violations in certain circumstances—§ 1983 stigma-plus claims being one example, e.g., Slater v. Mackey, No. 12-CV-4325, 2015 WL

13

6971793, at *9 (E.D.N.Y. Nov. 10, 2015)—but the Court is unaware of any authority recognizing a procedural due process violation based on the dissemination of false information at issue here, which involved the applicability of zoning regulations to the day care center. Thus, the Court agrees with Defendants that Plaintiffs' procedural due process claim must be dismissed.

### C. FOIL

Defendants move to dismiss any claim Plaintiffs assert based solely on the denial of various FOIL requests. Mem. at 11. At the outset, it is far from clear to the Court that Plaintiffs actually intended to bring a state-law challenge to the denial of their FOIL requests, since they purported to bring this action only under § 1983. Compl. ¶ 1. And even if the Complaint could be construed to assert such a claim, it would fail, because Plaintiffs seek only monetary damages, id. ¶ 34, and "FOIL does not give rise to a private cause of action to recover money damages," Jenn-Ching Luo v. Baldwin Union Free Sch. Dist., No. 12-CV-6054, 2013 WL 4719090, at *3 (E.D.N.Y. Sept. 3, 2013) (quoting Sank v. City Univ. of N.Y., No. 94-CV-253, 2002 WL 523282, at *9 (S.D.N.Y. Apr. 5, 2002)); accord Simpson, 2007 WL 1755749, at *9. Thus, to the extent that Plaintiffs assert a claim seeking damages for the denial of their FOIL requests, the Court must dismiss it.

### D. Plaintiffs' Motion for Summary Judgment

Plaintiffs appear to ask the Court to grant summary judgment in their favor. Resp. at 13. As the Court has previously noted, "courts should ordinarily afford the opponent a reasonable opportunity to conduct discovery before entertaining . . . a motion [for summary judgment]." Middle East Crisis Response v. City of Kingston, No. 08-CV-690, 2008 WL 5234320, at *1 (N.D.N.Y. Dec. 15, 2008) (Kahn, J.); accord Irving v. Philips, No. 15-CV-6413, 2017 WL

14

85427, at *1 (W.D.N.Y. Jan. 10, 2017) ("[S]ummary judgment is generally not appropriate until after some discovery has occurred."). Plaintiffs have not pointed to any reason for ruling on their motion for summary judgment before any discovery has taken place. Thus, the Court denies the motion with leave to renew.

### E. Opportunity to Amend

A court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). The Court sees no reason to depart from this rule here. Accordingly, Plaintiffs have thirty days to file an amended complaint to cure the deficiencies the Court has identified in their FOIL and procedural due process claims. Plaintiffs' amended complaint, which if filed shall supersede and replace in its entirety the original Complaint, must also be a complete pleading setting forth all of all of the claims that Plaintiffs wants the Court to consider as a basis for awarding relief.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 11) is **GRANTED in part with leave to amend** as to Plaintiffs' procedural due process claim and Plaintiffs' claim challenging the denial of their FOIL requests, and **DENIED in part** as to Plaintiffs' First Amendment retaliation claim; and it is further

**ORDERED**, that if Plaintiffs wish to proceed with their FOIL and procedural due process claims, they must file an amended complaint as set forth above within **thirty (30) days** of the filing date of this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiffs' Motion for Summary Judgment (Dkt. No. 15) is **DENIED with leave to renew**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     March 30, 2017
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge